IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL INDICTMENT NO.: |
| | : | 2:12-CR-026-RWS-JCF |
| EDWARD TREISBACK | : | |

## ORDER AND REPORT AND RECOMMENDATION

Before the Court is Defendant's Renewed Motion to Dismiss for Speedy Trial Violation. (Doc. 16). For the reasons discussed below, it is **RECOMMENDED** that Defendant's motion be **DENIED**.

## Procedural History

A Complaint filed on May 13, 2011 in criminal case number 2:11-CR-22-RWS-SSC charged Defendant with receiving and possessing child pornography. (2:11-CR-22-RWS-SSC at Doc. 1). An Indictment filed on June 7, 2011 in that case charged Defendant with possession of child pornography. (*Id.* at Doc. 11). On May 30, 2012, Defendant moved to dismiss the Indictment for violation of the Speedy Trial Act and his speedy trial right under the Sixth Amendment.[1] (*Id.* at Doc. 36). A Superseding Indictment was filed on July 10, 2012, charging

---

[1] Defendant also filed motions to dismiss based on the First Amendment and due to allegedly outrageous law enforcement conduct, but the Court denied those motions. (*See* Docs. 26, 27, 28, 33, 35 in 2:11-CR-22-RWS-SSC). Defendant moved to adopt those motions and related filings in this case (Doc. 17), and the Court granted that motion and directed that the motions, briefs, and rulings on the motions from the prior case be filed in this one. (*See* Doc. 18-25).

1

Defendant with receiving and possessing child pornography. (*Id.* at Doc. 38). Defendant then filed a supplemental motion to dismiss for violation of his speedy trial rights. (*Id*. at Doc. 42). On July 19, 2012, District Judge Richard W. Story dismissed the original Indictment without prejudice. (*Id.* at Doc. 43). Judge Story explained that more than 70 unexcludable days had passed, and therefore, Defendant was entitled to dismissal of the Indictment under the Speedy Trial Act, 18 U.S.C. § 3162(a)(2). (*Id.* at 2). Judge Story further explained that the dismissal was without prejudice because "the delay involved here is not sufficient to warrant a dismissal with prejudice, in light of the seriousness of the offense charged," and "the delay in this case was not inordinate." (*Id.* at 3). Finally, Judge Story found that Defendant's constitutional right to a speedy trial was not violated because "nothing in the record supports a conclusion that any delay on the part of the Government was a deliberate attempt to delay the trial or to hamper the defense in any way," and because Defendant has "failed to show any significant prejudice as a result [of] the delay of his trial." (*Id*. at 5). On August 3, 2012, Judge Story dismissed the Superseding Indictment without prejudice for the reasons stated in dismissing the original Indictment. (*See* 2:11-CR-22-RWS-SSC at Doc. 50).

On August 14, 2012, the Government filed an Indictment in this case, charging Defendant with receiving and possessing child pornography.[2] (Doc. 1). Defendant was scheduled to be arraigned on November 1, 2012 (*see* Doc. 5), but he did not appear. (*See* November 1, 2012 docket entry). As discussed below, agents were unable to locate and arrest him until October 28, 2013. (*See* Doc. 27). Defendant had an initial appearance on October 29, 2013 (*see* Doc. 10) and was arraigned on October 30, 2013, at which time Defendant objected to proceeding on the Indictment based on alleged speedy trial violations (*see* Doc. 13). Defendant has remained in custody since his arrest. (*See* Doc. 14).

On November 13, 2013, Defendant filed this renewed motion to dismiss the Indictment based on a violation of his speedy trial rights under the Sixth Amendment and the Speedy Trial Act. (Doc. 16). The Government opposed the motion. (Doc. 30). The Court held a hearing on Defendant's motion on January 9, 2014 (*see* Doc. 32), and a transcript of that hearing was filed on January 17, 2014 (Doc. 33). Although the parties were given the opportunity to file post-hearing briefs (*see* Doc. 32), they elected not to do so. Briefing is therefore complete, and the undersigned now considers the merits of Defendant's motion.

---

[2] The Indictment in this case is identical to the Superseding Indictment filed in the previous case. (*Compare* Doc. 1 *with* Doc. 38 in 2:11-CR-22-RWS-SSC).

## Facts

These facts are based on the testimony of Anthony Scott, a Special Agent with the Department of Homeland Security, who testified at the January 9, 2014 hearing about the efforts made by law enforcement officials to locate and arrest Defendant. Agent Scott, who was assigned to investigate child exploitation cases, served as the lead federal agent in the investigation of Defendant. (Tr. 6-7). After the dismissal of the first case, Agent Scott continued to work on this matter when the case was re-indicted in August 2012. (Tr. 8). Agent Scott was present in court on the scheduled date of Defendant's arraignment, November 1, 2012, but Defendant did not appear. (Tr. 8-9).

Agent Scott then took several steps to try to locate Defendant, but those efforts were not successful until Defendant's arrest on October 28, 2013. Scott and other law enforcement officers went to Defendant's house in Clayton, Georgia six to eight times "at least," and observed that mail appeared to be accumulating in his mailbox; the United States Postal Service also advised Scott that Defendant was not picking up his mail from his mailbox. (Tr. 10, 24-25). On several occasions, agents conducted surveillance of Defendant's house dressed in camouflage and camped in the woods near his house, staying there overnight. (Tr. 11-12). In June 2013, an FBI SWAT team entered Defendant's residence to arrest him because they believed that he was present, but he was not there. (Tr. 12-13, 27-28). Agent

Scott explained that agents wore camouflage to conduct surveillance, rather than "traditional surveillance," and the SWAT team was involved because he was concerned for officer safety. (Tr. 12-13). The heightened concern for officer safety was justified, according to Scott, for at least two reasons—Defendant's behavior during the execution of a search warrant at his residence in May 2011 and statements he later made to family members and/or neighbors. (*See* Tr. 11-12). During the execution of the search warrant, Defendant refused to comply with agents' directives to exit a bedroom. (Tr. 7-8, 14-15). When the agents entered the bedroom, Defendant ignored their commands to stand up and show his hands, and the agents found a gun near Defendant. (Tr. 8, 15, 17). In addition, after the Court dismissed the charges against Defendant, he made statements to family members and/or neighbors that he was not going back to jail.[3] (Tr. 11).

Agent Scott also visited the assisted living facility where Defendant's father lived to determine whether Defendant had visited his father there, and asked the manager to call Agent Scott or the Sheriff's Office if Defendant appeared there to visit his father. (Tr. 9-10). Agent Scott received a phone call shortly after

---

[3] Agent Scott also testified that Defendant had previously claimed to be a "Sovereign Citizen." (Tr. 14). Chief Judge Julie E. Carnes has observed, "At bottom, a sovereign citizen claims that a federal court has no jurisdiction to try the defendant for the federal crimes with which he is charged." *United States v. Perkins*, No. 1:10-cr-97-1-JEC-LTW, 2013 U.S. Dist. LEXIS 102951, at *4 (N.D. Ga. July 23, 2013); *see also United States v. Cartman*, No. 1:10-cr-512-01-JEC, 2013 U.S. Dist. LEXIS 79137, *2-3 (N.D. Ga. June 5, 2013) (same).

Christmas from an employee that Defendant had been there, but the employees did not know to call him while Defendant was there, so the agents "missed an opportunity" to apprehend him. (Tr. 9-10).

"National comprehensive reports" also indicated an address associated with Defendant in Jacksonville, Florida, but the owner of the home advised that Defendant had not been staying there, although the owner had received some of Defendant's mail that had been forwarded there. (Tr. 10-11, 25). Agent Scott also determined that Defendant had visited a friend in North Carolina, Gayle Anderson, after the charges were dismissed, so agents went to her home, but Defendant was not there. (Tr. 11). Agents also went to another address near Ms. Anderson's, but did not find Defendant there, either. (Tr. 11).

Finally, on October 28, 2013, as agents conducted surveillance of Defendant's residence, a neighbor reported that Defendant was on the neighbor's property and the agents arrested him there. (Tr. 30, 32-33; *see also* Doc. 27).

During this period, Agent Scott had many other cases, so he was "fitting all this in between working on [his] other cases." (Tr. 13). In addition, Defendant's residence was three hours away from Agent Scott's office. (Tr. 13-14).

**Discussion**

Defendant asks the Court to dismiss this Indictment with prejudice for violations of the Speedy Trial Act and his Sixth Amendment right to a speedy trial. (*See* Doc. 16 at 5).[4]

**I.     The Speedy Trial Act**

"The Speedy Trial Act provides that a defendant's trial 'shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.'" *Hill v. States*, No. 1:08-CR-0190-WSD-AJB-4, 2013 U.S. Dist. LEXIS 44751, at *9 (N.D. Ga. Jan. 17, 2013) (quoting 18 U.S.C. § 3161(c)(1)), *adopted by* 2013 U.S. Dist. LEXIS 39667 (N.D. Ga. Mar. 21, 2013). The Act explicitly states that if a charge is dismissed and then asserted in a subsequent indictment, as was the case here, the Act's deadlines set forth in § 3161(b) and (c) "shall be applicable with respect to such *subsequent* . . . . indictment . . . ." 18 U.S.C. § 3161(d)(1) (emphasis added).[5]

---

[4]  In his renewed motion to dismiss, Defendant "re-asserts [the] initial dismissal should have been with prejudice[.]" (Doc. 16 at 5). To the extent that Defendant requests reconsideration of Judge Story's determination that dismissal of the prior Indictment and Superseding Indictment were without prejudice, Defendant has not shown that reconsideration is appropriate.

[5] On the other hand, a superseding indictment does not reset the Speedy Trial Act "clock," which is why the superseding indictment in 2:11-CR-22-RWS-SSC did not cure the violation of the Act, as acknowledged by the Government in that case.

Thus, the Speedy Trial Act's 70-day period for beginning Defendant's trial began on October 29, 2013, the date Defendant made his initial appearance on the Indictment in this case.

The Act excludes from that 70-day period a number of time periods, including a delay caused by the filing of a pretrial motion through the conclusion of the hearing on the motion "or other prompt disposition" of the motion, up to 30 days from the date the court has all materials necessary to rule on the motion. *See* 18 U.S.C. §§ 3161(h)(1)(D) & (J); *see also Collins v. United States*, 481 Fed. Appx. 525, 528 (11th Cir. 2012) (unpublished opinion), *cert. denied*, 2013 U.S. LEXIS 1678 (U.S. Feb. 25, 2013); *United States v. Mers*, 701 F.2d 1321, 1335-37 (11th Cir. 1983).  In *Collins*, the court explained:

> Any delay resulting from a pretrial motion is excluded, and this period runs "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." [18 U.S.C.] § 3161(h)(1)(F) [now (D)] (2004).  With respect to a motion for which a hearing is required, the entire period from the filing of the motion to the hearing on that motion is excluded without reference to whether that time period was unreasonable . . . .  If, after the hearing, the court has all of the materials necessary to rule on the motion, it has the motion under advisement immediately following the hearing . . . . From that date, any delay reasonably attributable to the period during which the motion is under advisement by the district court, which cannot exceed 30 days, is excludable.  18 U.S.C. § 3161(h)(1)(J).

---

(*See* 2:11-CR-22-RWS-SSC at Doc. 49; *see also Collins v. United States*, 481 Fed. Appx. 525, 528 (11th Cir. 2012) (unpublished opinion)).

481 Fed. Appx. at 528. Furthermore, magistrate judges and district judges have thirty days each to take pretrial motions under advisement. *See Mers*, 701 F.2d at 1337.

Thus, the period from Defendant's filing of his renewed motion to dismiss on November 13, 2013 until the Court's disposition of that motion are excluded from the 70-day period, and therefore, to date only 15 days have elapsed for purposes of the Speedy Trial Act, i.e., October 29, 2013 to November 13, 2013. Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss the Indictment based on a Speedy Trial Act violation be **DENIED**.

## II.     Sixth Amendment

"The federal constitution guarantees the right to a speedy trial." *Hill*, 2013 U.S. Dist. LEXIS 44751, at *8 (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). "Sixth Amendment speedy trial rights attach 'at the time of arrest or indictment, whichever comes first, and continue until the date of trial.'" *Id.* (quoting *United States v. Knight*, 562 F.3d 1314, 1323 (11th Cir. 2009)). The determination of whether a defendant's right to a speedy trial under the Sixth Amendment has been violated rests on an assessment of four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant." *Barker*, 407 U.S. at 530 (1972). "Unless the length of delay is 'presumptively prejudicial' – which occurs as the delay approaches one year – a district court need

9

not consider the other factors." *Hill*, 2013 U.S. Dist. LEXIS 44751 (citing *Knight*, 562 F.3d at 1323).

As a preliminary matter, the undersigned must determine the relevant period under consideration for purposes of Defendant's Sixth Amendment claim. Citing *United States v. McDaniel*, 631 F.3d 1204 (11th Cir. 2011), the Government persuasively contends that the period of time between the filing of the original indictment in 2:11-CR-22-RWS-SSC, which the Court dismissed without prejudice, and the filing of the Indictment in this case is not "counted" in determining whether Defendant's right to a speedy trial was violated. (*See* Doc. 30 at 3). In *McDaniel*, the Court noted, "The Sixth Amendment speedy trial guarantee was no longer effective for McDaniel's original indictment once the district court dismissed it," citing *United States v. McDonald*, 456 U.S. 1, 7-9 (1982). *McDaniel*, 631 F.3d at 1209 n.2; *see also United States v. Mays*, 424 Fed. Appx. 830, 832 (11th Cir. 2011) (unpublished opinion) (rejecting defendant's reliance on the date of his original indictment as "misplaced, because '[t]he Sixth Amendment speedy trial guarantee was no longer effective for [his] original indictment once the district court dismissed it' " (quoting *McDaniel*, 631 F.3d at 1209 n.2)); *United States v. Hernandez*, 724 F.2d 904, 906 (11th Cir. 1984) (rejecting defendant's argument that "with respect to his rights under the sixth amendment the delay prior to trial must be measured from the date of his original

indictment" because "[h]is argument runs counter to the rationale of the Supreme Court's recent holding in [*McDonald*]"); *United States v. Pullen*, 721 F.2d 788, 791 (11th Cir. 1983) (same).[6]

Thus, the Court considers the relevant period for evaluating Defendant's Sixth Amendment claim to begin with the issuance of the Indictment on August 14, 2012 in this case. As to the end point, the undersigned agrees with the Government that Defendant's motion is somewhat premature given that his trial has not yet begun, and therefore, the period of time between his Indictment and his trial is unknown. (*See* Doc. 30 at 3-4; *see also United States v. Ingram*, 446 F.3d 1332, 1337 n. 3 (11th Cir. 2006) ("The relevant delay is the time between the date of the indictment and the trial date.")). For purposes of considering Defendant's motion, the undersigned focuses on the period of time between the Indictment and

---

[6] Even if the proper period under consideration is from the filing of the original Indictment, for the reasons given by Judge Story in his July 19, 2012 Order in 2:11-CR-22-RWS-SSC, the undersigned finds that the "delay" from the filing of the original indictment to the dismissal of that case did not violate Defendant's Sixth Amendment speedy trial right. (*See* 2:11-CR-22-RWS-SSC at Doc. 43). Furthermore, the undersigned finds no evidence that the Government sought to evade Defendant's Sixth Amendment's speedy trial right or acted in bad faith by dismissing the previous action and then re-filing this Indictment. The Court dismissed the previous case due to violations of the Speedy Trial Act, not the Sixth Amendment, and the Government acted diligently in bringing a new Indictment less than two weeks after the Court dismissed the previous action. *See, e.g.*, *United States v. Artez*, No. 2:07-CR-254, 2007 U.S. Dist. LEXIS 74772, at *8-9 (D. Utah Oct. 5, 2007) (finding that "there is no evidence of bad faith by the government with respect to the dismissal of the original indictments," which were dismissed by the court due to Speedy Trial Act infractions,"and the "subsequent re-filing of the present indictment" six months later).

Defendant's arrest on October 28, 2013. Following that date, there has been no unreasonable delay in the trial of Defendant; any delay has been the result of the Court's consideration of Defendant's motion to dismiss the Indictment.

As to the first factor—length of delay—a delay of more than one year is presumptively prejudicial. *See Knight*, 562 F.3d at 1323. The Government points out, however, that Defendant's initial appearance was scheduled for November 1, 2012, and it contends that that should be the starting point for the length of delay, resulting in a delay of less than one year between his initial appearance and his arrest. (*See* Doc. 30 at 4). The Government provides no authority in support of that contention. Out of an abundance of caution, the undersigned will assume for the sake of discussion that the delay has exceeded a year and consider the remaining factors.

With respect to the reason for the delay, the undersigned agrees with the Government that that factor weighs against Defendant. He did not appear for the scheduled arraignment on November 1, 2012, and Agent Scott testified credibly to the ongoing, but unsuccessful efforts, to locate and arrest Defendant until October 28, 2013. Agent Scott's testimony shows that law enforcement agents worked diligently to find and arrest Defendant, pursuing alternative methods to locate him, including contacting people in other states to find him. Agent Scott also presented evidence that Defendant had previously been uncooperative with law enforcement

officers when executing a search warrant; he had made statements to friends or family that he did not intend to go back to jail; and he had had mail forwarded to a location in Florida, even though he did not live there, which supports a finding that he intended to evade law enforcement officers' efforts to arrest him. Accordingly, the undersigned finds that this factor weighs in favor of the Government and against Defendant.

As to Defendant's assertion of his right to a speedy trial, the undersigned finds that Defendant has asserted that right at his arraignment and by filing this motion. Thus, this factor cuts in favor of Defendant.

Finally, with respect to the last factor—the actual prejudice borne by Defendant—the undersigned finds that Defendant has failed to make the necessary showing. Defendant contends that the delay has caused him to lose a key witness, his father, "who, because of his age and the continued detention of Mr. Treisback, deteriorated mentally and physically to the point of being unavailable." (Doc. 16 at 5). At the conclusion of the hearing, defense counsel asserted that at the time of the alleged offenses, Defendant and his father lived together, and:

> there [was] a, for lack of a better term, boatload of pornography on the computer. The question will be, how did it get there? Who put it on there? The father could have been a relevant witness to that. The delay has been preventing him from offering that testimony. We can't, from what I understand, he suffers from dementia now, has no recollection of it. I think the delay in that respect has prevented us from giving an affirmatively potential witness . . . . At trial I could have put him on the stand, if he had denied it I could have cross-

13

> examined him and tried to bring that out. If he had obviously admitted it, it would have been an entirely different scenario, but I can't represent which way he would have gone. I can't make any representation to that whatsoever.

(Tr. 37). Defense counsel's speculations that Defendant's father could have potentially assisted in his defense and that his absence may prejudice Defendant are insufficient to make a showing of actual prejudice. Defendant presented no evidence on this point, including but not limited to any statements or indications by Defendant's father, made before he allegedly became unable to testify, that he had any knowledge of or involvement in the offenses alleged in the indictment.

The undersigned notes that Defendant made the same argument in moving for dismissal of his previous case on speedy trial grounds, i.e., that the delay in trying him "prejudiced his defense in that a favorable witness, his father, is no longer available due to failing physical and mental health[.]" (2:11-CR-22-RWS-SSC at Doc. 36 at 10). In his July 19, 2012 Order, Judge Story acknowledged Defendant's contention about his father's inability to testify, but found that Defendant had "fail[ed] to inform the Court of the nature of the testimony that would be expected from his father." (*Id.* at Doc. 43 at 4). "Thus," Judge Story wrote, "it is difficult for the Court to determine what actual prejudice has been visited upon Defendant." (*Id.*). The undersigned agrees with that assessment.

Having weighed the above factors, the undersigned finds that the delay in this case, involving very serious allegations of criminal wrongdoing, has not

deprived Defendant of his constitutional right to a speedy trial.[7]  Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss based on a violation of his Sixth Amendment right to a speedy trial be **DENIED**.

## Summary

For the foregoing reasons, it is **RECOMMENDED** that Defendant's Renewed Motion to Dismiss for Speedy Trial Violation (Doc. 16) be **DENIED**.

It is further **ORDERED** that subject to a ruling by the District Judge on any objections to orders or recommendations of the undersigned Magistrate Judge, this case is **certified ready for trial**.

**IT IS SO ORDERED, REPORTED AND RECOMMENDED** this 19th day of February, 2014.

>  /s/  *J. CLAY FULLER*
> J. CLAY FULLER
> United States Magistrate Judge

---

[7] *See, e.g.*, *Barker*, 407 U.S. at 531 (noting that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge").